IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MONIQUE L. MILLER,** ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **MICHAEL J. ASTRUE,** ) <br> **COMMISSIONER OF SOCIAL** ) <br> **SECURITY,** ) <br> Defendant. ) | C.A. No. 09-170 Erie <br><br> **District Judge McLaughlin** <br> **Magistrate Judge Baxter** |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that the Plaintiff's Motion for Summary Judgment [ECF No. 11] be denied, that the Defendant's Motion for Summary Judgment [ECF No. 13] be granted, and that the administrative decision of the Commissioner of Social Security ("Commissioner") be affirmed.

**II.    REPORT**

### A.   Relevant Procedural History

Plaintiff Monique L. Miller ("Miller") commenced this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner's decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act")[42 U.S.C. §§ 401-433, 1381-1383f]. Miller proactively applied for DIB and SSI benefits on March 29, 2004, alleging disability as of September 20, 2002. (Tr. 67-69, 124, 353-55).[1] The applications were

---

1.

The Court's recitation of relevant facts is derived from the transcript of the administrative record filed by the Commissioner as part of his answer in accordance with § 205(g)of the Act, 42 U.S.C. § 405(g), which is referred to hereinafter as "Tr. ____." (See ECF No. 9).

administratively denied on August 23, 2004. (Tr. 43). Miller responded on September 15, 2004, by filing a timely request for an administrative hearing. (Tr. 48-49). On July 18, 2006, a hearing was held in Franklin, Pennsylvania before Administrative Law Judge James Pileggi (the "ALJ"). (Tr. 19). Miller, who was represented by counsel, appeared and testified at the hearing. (Tr. 368-382). Testimony was also taken from Noel Plummer, Ph.D., an impartial vocational expert ("VE"). (Tr. 382-390).

In a decision dated October 27, 2006, the ALJ determined that Miller was not "disabled" within the meaning of the Act. (Tr. 16-26). The Appeals Council denied Miller's request for review on May 4, 2009, thereby making the ALJ's decision the final decision of the Commissioner in this case.[2] (Tr. 7-9). This action was commenced by Miller on July 9, 2009. (ECF No. 1). Miller and the Commissioner filed motions for summary judgment on February 16, 2010, and March 16, 2010, respectively. (ECF Nos. 11 & 13). These motions are now ripe for consideration.

**B.  Standard of Review**

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

---

[2] Miller was found disabled as of February 6, 2007, on subsequent DIB and SSI applications. However, the Appeals Council considered this evidence and concluded it did not warrant a change in the ALJ's decision. (Tr. 8). The decision issued on these subsequent applications is not relevant to determining whether the ALJ's decision in the present case was supported by substantial evidence.

2

adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health & Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. Stewart v. Secretary of Health, Education & Welfare, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. Weir on Behalf of Weir v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a

3

> "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

Chenery Corp., 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. Fargnoli v. Massanari, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

4

### C.     The ALJ's Decision

The ALJ determined that Miller met the non-disability requirements for a period of disability and disability insurance benefits as set forth in section 216(I) of the Act through September 30, 2007. (Tr. 21). Although Miller had earnings posted subsequent to her alleged onset date, the ALJ found they did not rise to the level of "substantial gainful activity" and therefore, Miller had not engaged in substantial gainful activity since her alleged onset date, September 20, 2002. (Tr. 21).

The ALJ found Miller was suffering from Crohn's disease and an organic mental disorder. (Tr. 22). Although these impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c), the ALJ concluded that they did not meet or medically equal an impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1 (the "Listing of Impairments," or with respect to a single impairment, a "Listed Impairment" or "Listing"). (Tr. 22).

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Miller's residual functional capacity ("RFC") as follows:

> Upon careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at any exertional level requiring no more than simple, repetitive, routine processes and settings; no high stress; no high quotas or close attention to quality production standards; not requiring strict adherence to a break schedule.

(Tr. 22).

Miller had past relevant work as a restaurant worker. (Tr. 383). The VE testified that this job was classified at the light to medium and semi-skilled level of exertion. (*Id.*). It was determined that Miller could not return to her past relevant work, since her RFC limited her to positions that don't require a strict adherence to a break schedule. (Tr. 25, 384).

Miller was born on November 22, 1968, making her thirty three years old as of her application date and thirty seven years old as of the date of the ALJ's decision. (Tr. 25, 368). She was classified as a "younger individual" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563, 416.963. Miller had the equivalent of a high school education and the ability to communicate in English. (Tr. 25). Given the applicable residual functional capacity and

5

vocational assessments, the ALJ concluded that Miller could work as a janitor/cleaner. (Tr. 25). The VE's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). (Tr. 385-86).

### D.     Background

Miller has a history of Crohn's disease which was first diagnosed in 1981. (Tr. 334). In April 1999, Miller began to see Dr. Los, an internist, for treatment of Crohn's disease. (Tr. 241-61, 297-01, 304-06). Dr. Los treated Miller primarily through medication, such as Asacol, to help control her Crohn's disease. (Tr. 241-63, 304-05). From 2000-2002, Miller had some emergency room visits and hospitalizations for exacerbations of her Crohn's disease. (Tr. 154-63, 170-90, 208-15, 224-39).

Dr. Los performed a consultative examination of Miller in connection with her Social Security disability claim. (Tr. 262-67). Dr. Los noted Miller's difficulty complying with her medication because of not having access to insurance. (Tr. 262). He noted that Miller had recently been taking her medications more frequently. (*Id.*). Miller's bowel movements decreased from seven-to-ten per day to five-to-eight per day. (*Id.*). Miller was experiencing less painful defecation. (*Id.*). She also never had any significant fever or chills or "significant constitutional symptoms such as night sweats or weight loss. (*Id.*). Dr. Los concluded that Miller's Crohn's disease was "stable" on her present dosage of Asacol. (Tr. 265).

Dr. Los also noted Miller's history of partial colectomy. (Tr. 263-64). Other than some diffuse mild to moderate tenderness over her abdominal area, Miller's abdominal area was unremarkable. (Tr. 263-64). Dr. Los also noted that Miller's June 2002 abdominal x-rays were unremarkable and a CT scan of her abdomen was "essentially negative." (Tr. 188-90, 265).

In addition to Crohn's disease, Miller has a history of a head injury she sustained in a 1987 motor vehicle accident. (Tr. 262-63, 265). Dr. Los found that the head injury was stable and her mental status was "at her baseline." (Tr. 265). Miller's neurological examination, including her cranial nerves, was "completely within normal limits." (Tr. 265). Miller denied any depression which had been fairly well controlled while on medications. (Tr. 263-64).

6

On June 1, 2003, Miller sought emergency room treatment for lower abdominal pain that occurred after eating. (Tr. 283-87). Miller was prescribed pain medications and was released the same day. (Tr. 283). On June 23, 2003, Dr. Los saw Miller for a follow-up appointment. (Tr. 304). He noted that plaintiff appeared "well" and that her abdominal examination remained unremarkable except for some tenderness in her right upper quadrant. (Tr. 304). At the appointment Miller continued to complain of periods of abdominal discomfort after eating. (Id.).

Following the June 1, 2003, appointment, Miller primarily complained of headaches. There were no further reported exacerbations of her Crohn's disease or notations of complaints of frequent bowel movements. (Tr. 297-301, 306). After June 2004, there were no further examination or treatment notes from Dr. Los. (Tr. 301).

On June 26, 2006, shortly before Miller's July 18, 2006, ALJ hearing, Dr. Los completed a questionnaire regarding Miller's ability to do work-related physical activities. (Tr. 331-34). He indicated that Miller could sit without restriction; frequently lift and carry twenty pounds; stand and/or walk at least two hours in an eight-hour workday; frequently stoop, crouch, kneel and crawl; occasionally climb ramps and stairs; reach, handle and use her fingers without limitation; and work around environmental factors and hazards without restriction. (Tr. 331-33). Dr. Los also indicated that Miller would be late to work and leave work early one day per week. (Tr. 333). Dr. Los did not complete the section asking "what medical/clinical finding(s) support this assessment?" (Tr. 333).

On July 25, 2006, after the hearing and at the ALJ's request, Dr. Los wrote a letter stating that Miller complained of three to four flare-ups each year during which time she would have to use the restroom "between 15 and 20 times per day by her report." (Tr. 334). Dr. Los stated this was double Miller's usual frequency of seven to ten times a day. (Id.). Dr. Los stated that the flare-ups "may last days or even weeks," during which time Miller "may need to be absent from work as well." (Id.).

Miller's record was reviewed in August 2004 by state agency psychologist Sharon Tarter, Ph.D. (Tr. 315-30). Dr. Tarter noted Miller's history of a cognitive disorder, depression, and her complaints of memory loss. (Id.). Dr. Tarter concluded that these mental impairments did not

7

preclude Miller from meeting the basic mental demands of sustained competitive work. (Tr. 330).

### E. Discussion

In support of her motion for summary judgment, Miller advances two alternative arguments. First, she contends that the ALJ erred in improperly rejecting her testimony and the medical opinions of Dr. Los, her treating physician, in determining her RFC. (Miller's Brief, ECF No. 12, at pp. 10-12). Second, Miller argues that the ALJ erred by denying her request for a supplemental hearing to gather additional vocational evidence. (Id. at p. 12).

Miller argues that the ALJ erred when he improperly rejected Dr. Los' medical opinion without noting any contrary medical evidence.[3] The claimant bears the ultimate burden of proving disability in Social Security disability cases. 42 U.S.C. §§ 423(d)(5)(A)(providing that "[a]n individual shall not be considered under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner may require."); 20 C.F.R. §§ 404.1512(a), 416.912(a). The ALJ, as fact finder, evaluates the record and weighs the relative worth of the evidence as a necessary part of determining disability. See 20 C.F.R. §§ 404.1520(a)(3), 404.1527(c), 416.920(a)(3), 416.927(c). Treating physicians' opinions are not automatically controlling, but are entitled to significant weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Indeed, the more supported and consistent an opinion is with the record, as a whole, the more weight will be given to the opinion. 20 C.F.R. §§ 404.1527(d)(3), (4), 416.927(d)(3), (4). The ALJ retains the duty to analyze treating source opinions and judge whether they are well-supported by the medical evidence and consistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

---

[3]

This report and recommendation focuses solely on Miller's Crohn's disease and limitations she alleges therefrom. Miller does not address any deficiency by the ALJ in addressing her alleged mental impairments and focuses only on the ALJ's "rejection" of Dr. Los' opinion in regards to her Crohn's disease, specifically her need for the restroom. (Miller's Brief, ECF No. 12, at p. 10).

8

In the present case, Dr. Los was Miller's treating physician for her Crohn's disease, and his notes form the vast majority of Miller's record. Dr. Los' treatment records are mainly notations of Miller's complaints of bowel movements and stomach pains and do not contain his own medical opinion. Indeed, despite Miller's testimony in regards to her inability to work, Dr. Los appeared to only be relating what Miller told him – "the objective medical evidence, including Dr. Los' own reports, [which did] not reflect signs and findings to corroborate such limitations." (Tr. 24).

The ALJ sufficiently analyzed Dr. Los' treatment records, which led him to conclude that Miller was not experiencing significant problems managing her Crohn's disease that were not accounted for in her RFC. Following Miller's alleged onset date, there is no evidence that Miller had frequent flare-ups of her Crohn's disease that required hospitalization. Indeed, the ALJ specifically noted that there were no admissions since September 20, 2002, Miller's alleged onset date. (Tr. 23). Miller's hospitalization in June 2003 for abdominal pain following eating did not require admittance. Miller was prescribed pain medication and released the same day. (Tr. 283-87, 303-05). Dr. Los' follow-up after this hospitalization noted that Miller continued to complain of abdominal discomfort after she ate. (Tr. 283-87, 303-05). However, there are no further notations of this as an ongoing problem in Dr. Los' treatment notes.

Furthermore, the ALJ noted Dr. Los's statement on March 5, 2003, that Miller's Crohn's disease had improved and had become more controllable since she began taking her medications more frequently. (Tr. 23, 262). Miller's bowel movements had decreased and were accompanied with less pain. (*Id.*). The ALJ noted that Miller "also had less painful defecation, only rare episodes of incontinence of bowel, never had any significant fever or chills, and **never** has any significant constitutional symptoms such as night sweats or weight loss." (Tr. 23)(emphasis original)(internal quotation marks omitted). The ALJ strengthened this observation by noting Dr.

Los' finding that Ms. Miller maintained her weight "fairly well."[4] (Tr. 23, 264). Furthermore, the ALJ referenced Dr. Los' notation that Miller's Crohn's disease was stable with medication. (Tr. 23, 265, 300). Indeed, Dr. Los noted that Miller's examinations had been stable over multiple appointments. (Tr. 265).

The ALJ noted that, after June 2003, Dr. Los' treatment notes reflect that Miller's primary complaints were headaches. (Tr. 23, 297-301, 306). Despite Miller's complaints of headaches, the ALJ noted that Dr. Los found her neurological findings unremarkable and a CT scan of the brain in June 2004 was "normal." (Tr. 24). Notations of Miller's Crohn's disease after June 2003 were infrequent and did not contain any mention of flare-ups or complaints of frequent or uncontrollable bowel movements. In fact, Dr. Los' last treatment note in June 2004 indicated that Miller had no complaints of nausea, vomiting, diarrhea, or constipation. (Tr. 23, 298). Since June 2004, there were no further treatment reports until the time of the ALJ hearing on July 18, 2006.

The ALJ also noted that there were no remarkable physical findings in Dr. Los' notes. Ms. Miller maintained her weight "fairly well." (Tr. 23, 296). Dr. Los' review of a 2002 abdominal CT scan were "essentially negative" and abdominal x-rays were "unremarkable." (Tr. 23, 300). There were also no rashes or skin abnormalities consistent with Crohn's disease. (Tr. 23, 300). Although Miller complained in June 2003 of "discomfort" that occurred primarily after eating, the ALJ noted that Dr. Los found Miller otherwise appeared "well." (Tr. 23, 301). The ALJ also noted that, besides Miller's complaints of diffuse mild to moderate tenderness of the abdomen, Dr. Los' findings of physical examination were unremarkable. (Tr. 23, 298-99).

During the hearing, the ALJ told Miller's counsel that "the crux of the situation here is the frequency and length of time that the claimant would be off task over the course of their usual workday." (Tr. 388). The ALJ noted that he would examine if Miller's testimony was

---

[4]

Miller testified at the hearing that she was five feet tall and weighed one hundred and sixty pounds. (Tr. 375). On March 5, 2003, Dr. Los noted she weighed 137 pounds. (Tr. 264).

10

adequately supported by the documentary evidence. (Id.). The ALJ requested that Miller's attorney provide a letter to address her frequency and duration of restroom breaks. (Id.). However, the letter provided, by Dr. Los, like his treatment notes, merely restated Miller's complaints of frequency and duration. (Tr. 334). Dr. Los used phrases such as "the patient does complain of," "by her report," "she states," and "Monique has described." (Id.). As a result, the ALJ noted in his decision that "Dr. Los merely accepted Ms. Miller's subjective complaints and self-reported history" and proceeded to note specific wording from the letter consistent with this conclusion. (Tr. 24).

Furthermore, the ALJ properly noted that it is the function of the ALJ to determine whether an individual is under disability within the meaning of the Act. 20 C.F.R. §§ 404.1527, 416.927, Social Security Ruling 96-2p. "A statement by a physician or other treating source can be given weight only to the extent it is supported by medical findings." (Tr. 24). There is nothing in the medical record that supports Miller's claims regarding the duration and frequency of her bathroom breaks. There is nothing in Dr. Los' treatment records expressing his opinion regarding Miller's duration or frequency of restroom breaks and, thus, the ALJ did not err in rejecting any such opinion.[5] The claimant bears the burden of proving disability and in the present case Miller failed to do so. The ALJ did not err in his analysis of the medical evidence of record.[6]

Despite Miller's contention, the ALJ also did not err in finding her testimony not

---

[5] Miller's reliance on Williams v. Sullivan, 970 F.2d 1178 (3rd Cir. 1992) is misplaced. Williams emphasizes that the ALJ has the duty to hear and evaluate all relevant evidence. 970 F.2d at 1184-85. Here, the ALJ did so. (Tr. 16-26). He was not required to point to contrary medical evidence in determining Miller was not disabled because Miller never met her burden of demonstrating sufficient evidence to support her claims of disability. (ECF No. 12 at p. 10).

[6] An ALJ may rely not only on what the record says, but also what it does not say. See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). Here, the ALJ noted that there was no medical support for Miller's testimony regarding the frequency, duration, and limiting effect of her restroom breaks. (Tr. 23-26).

11

credible. In determining credibility, an ALJ will evaluate the extent to which a claimant accurately describes the intensity and persistence of her symptoms and the extent to which her symptoms limit her capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). A claimant's subjective complaints must be seriously considered; however, it is within the ALJ's discretion to weigh the complaints against the medical and other evidence. 20 C.F. R. §§ 404.1529, 416.929.

The ALJ seriously considered Miller's testimony, but when weighed against the lack of medical and other evidence, ultimately found her testimony to be only partially credible with regard to the intensity, duration and limiting effects of her symptoms. (Tr. 23). The ALJ found that Miller's statements were unsupported and uncorroborated by Dr. Los' treatment records. (Tr. 24, 374-78). The ALJ specifically noted that, at the hearing, Miller "did not manifest any outward signs of a mental impairment, the effects of pain, or side effects from any of her medications of the severity to preclude work" as described in the RFC finding. (Tr. 24).

The ALJ also noted that "by Ms. Miller's own report she is still able to engage in significant activities of daily living, albeit with the assistance of family, inconsistent with an individual who is totally disabled. (Tr. 24). Though "sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity", the ALJ may consider daily activities. Fargnoli, 247 F.3d at 40, n.5 (ALJ could not rely on claimant's desire to return to light exertional work and to take a trip to Europe to demonstrate the ability to engage in substantial gainful activity). Activities of daily living are relevant and may be considered in evaluating a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3)(I), 416.929(c)(3)(I). The ALJ noted Miller's activities of daily living as one part of evaluating her ability to engage in substantial gainful activity, not solely to determine her ability to do so. (Tr. 24).

The ALJ also noted that Miller "has some earnings posted subsequent to the alleged onset date, including over $2,461.00 in 2004, indicating some limited work ability." (Tr. 24). The ALJ noted these earnings are not to demonstrate that Miller is capable of substantial gainful activity, but that she has a range of limited work activity which can be accommodated by the RFC.

Finally, the ALJ properly evaluated Dr. Los' treatment notes and disability examination,

as well as Miller's testimony, because he limited Miller's RFC to jobs "not requiring strict adherence to a break schedule." (Tr. 22). The ALJ specifically told the VE to determine if Miller would be able to perform any jobs if she "would need to have some degree of flexibility with regards to her bathroom breaks." (Tr. 383). Also, the VE was asked to take into account that Miller "would not be able to engage in work that required strict adherence to staying in a particular location." (Tr. 383). More specifically, the VE was asked to identify if there were any jobs "that didn't have that kind of strict adherence to the breaks." (Tr. 384).

The ALJ elaborated on these specific components of the RFC that he based on Miller's severe impairment of Crohn's disease. (Tr. 383-84). The ALJ never doubted Dr. Los' opinion that Miller suffered from Crohn's disease and he included this diagnosis in his RFC assessment and discussion with the VE. (Tr. 22, 383-84). Based on the RFC and the ALJ's specific limitations, the VE found that Miller would not be able to return to her past relevant work due to the need to have flexibility with breaks and location. (Tr. 384). The VE identified janitorial/cleaner jobs as the only appropriate positions allowing for such flexible breaks and mobility. (Tr. 385). The VE noted that the difficulty would come with "the other workers, and their expectations of the person being on the job as opposed to being away from the job." (Tr. 385).

However, when questioned by Miller's attorney, the VE elaborated that janitors are "pretty much on their own" when it comes to taking breaks and agreed with Miller's counsel that it generally didn't matter how many breaks a janitor/cleaner took so long as they finished their assigned job (ex. certain number of hotel rooms/offices). (Tr. 387). It was only when Miller's attorney asked if the person would have to remove themselves three to seven times a day for ten to twenty minutes at a time, "in addition to those other breaks", that the VE said the hypothetical person would "most likely not" be able to maintain competitive employment.[7] (Tr. 387-88). The

---

[7] Miller testified that during an eight hour shift, she would have to use the restroom for three to seven times. (Tr. 374). There was no testimony in regards to how long the restroom breaks would be.

same answer was given when asked about a person who would leave work three days a week. (Tr. 388).

The ALJ was not obligated to consider the VE's answers to Miller's attorney's questions, as there is no medical evidence that Miller would need to take ten to twenty minute bathroom breaks, three to seven times a shift, in addition to regular breaks, or that she would leave work three days a week. The ALJ sufficiently accounted for Miller's testimony and Dr. Los' treatment notes in regards to needing flexibility to use the bathroom, and provided supporting explanation for doing so. The ALJ's finding that Miller's testimony was not entirely credible was sufficiently supported by substantial evidence and therefore the Commissioner's decision in this case should be affirmed.

Miller's alternative argument that Dr. Los' July 25, 2006, letter warranted a supplemental hearing to gather additional vocational evidence is also without merit. (Miller's Brief, ECF No. 12, at p. 12). Miller only requested a subsequent hearing as an "alternative" and the ALJ was not required to obtain additional VE testimony after the hearing. (Tr. 58) See Hearing, Appeals and Litigation Law Manual ("HALLEX") I-2-5-56, I-2-5-60 (in relatively infrequent situations, an ALJ "may decide" to request additional VE evidence). Dr. Los' letter subsequent to the hearing did not add anything substantive or new to the record, but merely reflected his notations of Miller's prior complaints. (Tr. 331). Dr. Los' letter regarding Miller's complaints was consistent with her testimony at the hearing. (Tr. 374-76). The letter did not address, as the ALJ requested, Miller's frequency needs or the length of time she would be off task during an eight hour day due to her Crohn's disease. (Tr. 388). Furthermore, the ALJ specifically addressed Dr. Los' letter in his decision and found it was not supported by the objective medical evidence. (Tr. 24). Therefore, the ALJ did not err by not holding a supplemental hearing to gather additional vocational evidence.

### III. CONCLUSION

For the foregoing reasons, the ALJ's decision denying Miller's applications for DIB and SSI benefits is "supported by substantial evidence" within the meaning of 42 U.S.C. § 405(g).

Also, the ALJ did not err in choosing not to hold a supplemental hearing as the decision was discretionary and Dr. Los' letter subsequent to the hearing did not add anything new or substantial to the record.

Accordingly, it is respectfully recommended that Plaintiff's Motion for Summary Judgment (ECF No. 11) be denied and that the Commissioner's Motion for Summary Judgment (ECF No. 13) be granted. It is further recommended that the Commissioner's administrative decision be affirmed.

In accordance with 28 U.S.C. § 636(b)(1), the parties may file written objections to this report and recommendation within fourteen (14) days of the date on which they are served with copies of it.

/s/ Susan Paradise Baxter<br>
SUSAN PARADISE BAXTER<br>
United States Magistrate Judge

Dated: August 2, 2010

cc: The Honorable Sean J. McLaughlin
     United States District Judge